## WEIL v. FUND. SAME v. EICHLER. SAME v. HORWITZ.

District Court, S. D. New York. January 26, 1929.

Gray & Gottlieb, of New York City (William Katz, of New York City, of counsel), for plaintiff.

C. C. Cousins, of New York City, for defendants.

WINSLOW, District Judge. These suits are in equity and were tried together. It is alleged that the respective defendants have infringed plaintiff's patent No. 1,611,621, by making and selling articles substantially the same as plaintiff's invention. The patent was issued December 21, 1926, on application filed June 29, 1926.

The alleged invention relates to the manufacture of ornamental rosettes made from reinforced woven braid. The braid is reinforced on the parallel edges by wires, into which the braid is woven, "pliable in character," but "of sufficient inherent stiffness to maintain, under ordinary conditions of use, the shape into which they are bent during the formation of the rosette."

The patentee, further describing his invention, says that, in constructing the rosette, the braid "is folded over upon itself medially and longitudinally, with the reinforcing edge wires in close proximity and parallelism. * * * The fold of the braid upon itself produces a loop or scallop effect of the strands of the woven fabric which adds materially to the ornate appearance of the rosette."

The claims are as follows:

"1. As an article of manufacture, a rosette of the character designated, consisting of a strip of braid comprising a weave of flexible material incorporated with parallel edge-reinforcing wires, the braid being bent over medially upon itself with the reinforcing edge wires in juxtaposition, and the folded braid being then wound spirally upon itself to form convolutions of which the reinforc-ing wires constitute a retaining base, substantially in the manner and for the purpose set forth.

"2. As an article of manufacture, a rosette of the character designated, consisting of a strip of braid comprising a weave of flexible material incorporated with parallel edge-reinforcing wires, the braid being bent over medially upon itself with the reinforcing edge wires in juxtaposition, and the folded braid being then wound spirally upon it-self to form convolutions of which the reinforcing wires constitute a retaining base, the ends of said edge reinforcing wires being secured together at the centre of the rosette, for the purpose, and substantially in the manner set forth."

At the trial, it was conceded that the defendants had made or sold rosettes substantially the same in construction as the plaintiff's. Defendants, however, denied the validity of the patent and alleged prior use long before the filing of the application.

The record establishes, without contradiction, that braid with a wire on one edge had been in common use for various purposes, including the making of ornamental flowers, for many years. On the stand, the plaintiff admitted, in substance, that the only thing that he had added to the knowledge of the art was the making of a braid with a second wire on the other edge, parallel to the first wire.

It is quite evident that the rosette performs no mechanical function, but is purely ornamental. Indeed, an application had been filed by the patentee for a design patent, but the application was abandoned after rejection on references. Thereafter, the application for the patent in suit was made apparently because of the mechanical device in constructing the braid with two wires used for the manufacture of the ornamental rosette.

Certainly, the twisting of braid of the character in question into a rosette, or "little rose," hardly rises to the dignity of invention. Any skilled mechanic, or even one with deft fingers, could twist the braid into a semblance of a flower.

Turning, therefore, to the construction of the braid, it becomes evident that inquiry must be made whether or not invention is present. Witnesses have testified that the braid is readily made on a knitting machine, either with wire on one edge, or with wires on the parallel edges, and unless invention is present in the use of the second wire, I am unable to see that the patent is valid.

While a number of patents are cited by

way of anticipation, it is necessary to refer to but one, namely, the patent to Metzger, No. 1,024,272, dated April 23, 1912. This was a patent for the making of imitation feather articles, and describes the method of using strips of material woven back and forth in a knitting machine, with wires on the parallel edges. The construction of the strips of material was substantially the same as the patent in suit, turned to a different use. The record indicates that neither Metzger's patent, nor one to Whitmore, No. 363,929, for constructing rosettes, were before the examiner. I doubt whether the claims for the patent in suit would have been allowed, if these patents had been considered.

The record, to my mind, also proves beyond a reasonable doubt that braid having wire on parallel sides had been known for many years prior to the application in the instant case.

The witness Berlin, engaged in the braid manufacturing business established upwards of 22 years ago, was produced by the defendants. He produced sample books that had been used in the business since its founding. The samples, as they had been made from time to time, from which many sales had been made, were fastened in these voluminous books, Exhibits F and G. These books were old, thumb-worn, and some of the paper of the earlier samples yellow with age. A number of these samples were of the same construction as the braid used by the plaintiff in the manufacture of his rosettes. The braids, of which these samples were evidence, had been used for many years in the manufacture of flowers and ornaments, and a witness was produced who testified to his purchase of these braids from time to time. Both of these witnesses were without apparent interest in the outcome of the action, and were convincing in their testimony.

While the material used in the manufacture of the Berlin braids, perhaps, was different from that used by the plaintiff, the mechanical construction of the braid was similar to that used by the plaintiff and also disclosed in the Metzger patent. These braids were made in knitting machines, in like manner to the manufacture of plaintiff's braid.

There was other evidence introduced as to a sale of a specific pair of slippers having rosettes identical in construction with plaintiff's sold prior to the patent in suit, together with a catalogue of the shoe concern selling such rosettes. It is unnecessary, however, to weigh this testimony, as I am satisfied that beyond a reasonable doubt any claimed novelty in the construction of plaintiff's device was not only anticipated in the prior patents referred to, but was in common use many years before the patent in suit was issued.

My conclusion is that the patent is invalid for want of novelty and by reason of anticipation.

Decree will issue accordingly for the defendants.